IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**FILED**

OCT 23 2014

DAVID CREWS, CLERK
BY_____ Deputy



UNITED STATES OF AMERICA

V.

| | |
|---|---|
| CHRISTOPHER BOOTH, a/k/a "Chris" | CRIMINAL NO. 1:14CR 125 |
| LASHEDRICK EICHELBERGER, a/k/a "Boot" | 18 U.S.C. § 371 |
| RAYMOND BENTLEY, a/k/a "Raymond" | 18 U.S.C. § 924(c)(1) |
| DERRICK SANDERS, a/k/a "Tall Guy", a/k/a "Crane" | 18 U.S.C. § 1952 |
| JOHN DAVIS, a/k/a "Boosie" | 21 U.S.C. § 841(a) & (b)(1)(A) |
| ANTWON JORDAN, a/k/a "Big Tweet" | 21 U.S.C. § 841(a) & (b)(1)(C) |
| CLARENCE MELTON, a/k/a "Chino", a/k/a "Pookie" | 21 U.S.C. § 846 |
| KEWANCE FAIR, a/k/a "Black" | |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

Beginning at a time unknown to the Grand Jury, but from on or about January 2012, to on or about October 1, 2014, in the Northern District of Mississippi and elsewhere, the defendants:

CHRISTOPHER BOOTH, a/k/a "Chris"
LASHEDRICK EICHELBERGER, a/k/a "Boot"
RAYMOND BENTLEY, a/k/a "Raymond"
DERRICK SANDERS, a/k/a "Tall Guy", a/k/a "Crane"
JOHN DAVIS, a/k/a "Boosie"
ANTWON JORDAN, a/k/a "Big Tweet"
CLARENCE MELTON, a/k/a "Chino", a/k/a "Pookie"
KEWANCE FAIR, a/k/a "Black"

did unlawfully, knowingly and intentionally conspire and agree with each other and with other persons both known and unknown to the Grand Jury, to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride

(powder cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 846.

## Quantity of Cocaine Involved in the Conspiracy

With respect to CHRISTOPHER BOOTH, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride (powder cocaine), in violation of Title 21, United States Code, Section 841(b)(1)(A).

With respect to LASHEDRICK EICHELBERGER, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride (powder cocaine), in violation of Title 21, United States Code, Section 841(b)(1)(A).

With respect to the remaining defendants:

      RAYMOND BENTLEY, a/k/a "Raymond"
      DERRICK SANDERS, a/k/a "Tall Guy", a/k/a "Crane"
      JOHN DAVIS, a/k/a "Boosie"
      ANTWON JORDAN, a/k/a "Big Tweet"
      CLARENCE MELTON, a/k/a "Chino", a/k/a "Pookie"
      KEWANCE FAIR, a/k/a "Black"

the amount involved in the conspiracy attributable to each as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him is such that each defendant is in violation of possessing with intent to distribute and distributing a mixture and substance containing a detectable amount of cocaine hydrochloride (powder cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841 (b)(1)(C).

## MANNER, MEANS AND OBJECTS
## OF THE CONSPIRACY

The following paragraphs identify some of the objects of this criminal conspiracy, which were accomplished by the following means, among others, and in the following manner:

1. As part of the conspiracy, co-conspirators played different roles in the conspiracy, take upon themselves different tasks, and participate in the conduct of the drug trafficking network through various criminal acts. The co-conspirators made themselves and their services available at various times throughout the conspiracy and participated in certain drug trafficking ventures as required to promote and protect the distribution operation.

2. It was further part of the conspiracy that co-conspirators would correspond with each other and with other cocaine traffickers in Mississippi and Texas, among other places, to arrange for the shipment of large quantities of cocaine into the Northern District of Mississippi, and elsewhere, in order for said cocaine to be distributed in the Northern District of Mississippi, and elsewhere.

3. It was further part of the conspiracy that co-conspirators stored and counted drug proceeds, derived from the sale of cocaine, in Mississippi.

4. It was further part of the conspiracy that co-conspirators transported United States currency from Mississippi to Texas in order to purchase significant quantities of cocaine in Texas.

5. It was further part of the conspiracy that once said cocaine was purchased in Texas, it was transported to Mississippi, and elsewhere, in order for the cocaine to be distributed in the Northern District of Mississippi.

6. During and in furtherance of the conspiracy, it was part of the conspiracy that co-conspirators purchased 18 kilograms of cocaine from Texas and elsewhere which was then transported to Mississippi where it was seized by law enforcement.

7. Furthermore, it was part of the conspiracy that unlawful proceeds from the sale and distribution of cocaine by co-conspirators in the Northern District of Mississippi, and elsewhere, resulted in the accumulation of large quantities of cash. Said cash was seized by law enforcement from members of the conspiracy in Mississippi totaling in excess of $1,000,000.00.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

On or about May 1, 2014, in the Northern District of Mississippi, KEWANCE FAIR, and JOHN DAVIS, defendants, aided and abetted by each other, did knowingly and intentionally possess with intent to distribute and distribute cocaine base, a Schedule II controlled substance, all in violation of Title 18, United States Code, Section 2 and Title 21, United States Code, Sections 841(a) and (b)(1)(C).

## COUNT THREE

On or about September 30, 2014, in the Northern District of Mississippi, LASHEDRICK EICHELBERGER, defendant, did knowingly possess the following firearm, to wit: Smith & Wesson, Model SW9-VE, .9 mm, Semi-Automatic Pistol, during and in relation to and in furtherance of a drug trafficking crime for which he could be prosecuted in a Court of the United States, that is, he did possess said firearm in furtherance of the drug trafficking crime alleged in Count One, in violation of Title 18, United States Code, Section 924(c)(1).

## COUNT FOUR

Beginning at a time unknown to the Grand Jury, but from on or about January 2012, through on or about October 1, 2014, in the Northern District of Mississippi and elsewhere, CHRISTOPHER BOOTH & LASHEDRICK EICHELBERGER, defendants, did knowingly and

intentionally conspire with each other and other persons known and unknown to the Grand Jury, to travel in interstate commerce from the State of Mississippi to the State of Texas, with intent to distribute the proceeds of an unlawful activity, that is, a business enterprise involving the distribution of cocaine, a Schedule II controlled substance, and thereafter did perform acts to distribute the proceeds of said unlawful activity; in violation of title 18, United States Code, Sections 1952 and 371.

## MANNER, MEANS AND OBJECTS
## OF THE CONSPIRACY

The following paragraphs identify some of the objects of this criminal conspiracy, which were accomplished by the following means, among others, and in the following manner:

1. LASHEDRICK EICHELBERGER & CHRISTOPHER BOOTH along with other persons both known and unknown, were members of a drug trafficking organization responsible for importing kilograms of cocaine from Texas to Mississippi;

2. It was part of the conspiracy that LASHEDRICK EICHELBERGER & CHRISTOPHER BOOTH along with other co-conspirators would and did play different roles in the conspiracy, take upon themselves different tasks, and participate in the conduct of the drug trafficking network through various criminal acts. The co-conspirators made themselves and their services available at various times throughout the conspiracy and participated in certain drug trafficking ventures as required to promote and protect the distribution operation.

3. It was further part of the conspiracy that co-conspirators would communicate with each other and with cocaine traffickers in Texas and Mississippi, among other places, to arrange the shipment and purchase of cocaine into the Northern District of Mississippi, and elsewhere.

4. It was further part of the conspiracy that co-conspirators transported and distributed cocaine to buyers in the Northern District of Mississippi and elsewhere.

5. It was further part of the conspiracy that co-conspirators counted, transported and stored currency derived from the sale of controlled substances.

## OVERT ACTS

During the course of the conspiracy the following overt acts among others were performed by CHRISTOPHER BOOTH & LASHEDRICK EICHELBERGER, in furtherance of and to affect the goals of the conspiracy.

6. In the early part of 2012, CHRISTOPHER BOOTH & LASHEDRICK EICHELBERGER were introduced to one another for the purpose of distributing cocaine. BOOTH supplied multiple kilograms of cocaine to EICHELBERGER for sale and distribution in the Northern District of Mississippi.

7. During the term of this conspiracy, LASHEDRICK EICHELBERGER collected and stored money derived from the sale of cocaine provided by BOOTH at various "stash houses" in the Northern District of Mississippi and elsewhere.

8. During the term of this conspiracy, EICHELBERGER would transport the money derived from the sale and distribution of cocaine to BOOTH in the Southern District of Mississippi where BOOTH would collect and store the money.

9. During the term of this conspiracy, BOOTH would then transport and cause others to transport on his behalf the money derived from the sale and distribution of cocaine in the Northern District of Mississippi and elsewhere to "Pops" a source of supply of cocaine located in the Houston, Texas area to be used to purchase additional kilogram quantities of cocaine to be sold and distributed in the Northern District of Mississippi and elsewhere.

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Provision

This indictment charges the defendants:

> CHRISTOPHER BOOTH, a/k/a "Chris"
> LASHEDRICK EICHELBERGER, a/k/a "Boot"
> RAYMOND BENTLEY, a/k/a "Raymond"
> DERRICK SANDERS, a/k/a "Tall Guy", a/k/a "Crane"
> JOHN DAVIS, a/k/a "Boosie"
> ANTWON JORDAN, a/k/a "Big Tweet"
> CLARENCE MELTON, a/k/a "Chino", a/k/a "Pookie"
> KEWANCE FAIR, a/k/a "Black"

with a violation of Title 21, United States Code, Section 841(a)(1). Pursuant to Title 21, United States Code, Section 853, upon conviction of any said violations of the law, defendant(s) shall forfeit to the United States (1) any property obtained, directly or indirectly, as the result of such violation(s), and (2) any of his property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

Further, if any of the property described as being subject to forfeiture, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of this Court;

(d) has been substantially diminished in value; or

7

(e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant.

**A TRUE BILL**

*First Asst.* /s/ William C. Lamar, FAUSA
**UNITED STATES ATTORNEY**

_/s/ Signature Redacted_
**FOREPERSON**